**UNITED STATES FEDERAL DISTRICT COURT**
**DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| **CURTIS JOHNSON,**<br>an individual<br><br>          Plaintiff, | | Case No. 8:14-cv-_____ |
| v. | | |
| **THE NEBRASKA METHODIST HOSPITAL**,<br><br>          Defendant. | | **COMPLAINT**<br><br>JURY DEMAND |

## INTRODUCTION

1.      Curtis Johnson ("Mr. Johnson") works as a professional technician at The Nebraska Methodist Hospital ("Methodist") in Omaha, Nebraska.  Mr. Johnson, a black male, worked at Methodist from December 2010 until May 2014, when Methodist terminated him.

2.      Methodist's management subjected Mr. Johnson to demeaning and degrading insults, abuse and treatment in front of Mr. Johnson's coworkers.

3.      Mr. Johnson viewed the tape recorded security footage.

4.      Mr. Johnson has also suffered discriminatory treatment in other aspects of his employment at Methodist.

## VENUE & JURISDICTION

5.      This matter arises under federal and state law. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 based on Mr. Johnson's federal claims in this Complaint.  This Court has supplemental jurisdiction of the Nebraska state law claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in this district pursuant to 28 U.S.C § 1391(b)(2), because the acts forming the basis for this Complaint were orchestrated from, planned in and conducted in this District.

**PARTIES**

7.      Mr. Johnson is a citizen and resident of Omaha, Nebraska.  He is an African-American male.  He was employed by Methodist at its Omaha location located at 8511 W. Dodge Road, Omaha, NE 68114.

8.      Methodist is a Nebraska non-profit domestic corporation.  Methodist's principal place of business is located at 8511 W. Dodge Road, Omaha, NE 68114.

**FACTUAL BACKGROUND**

9.      Curtis Johnson ("Mr. Johnson") is a black male.  Methodist employed him as a professional Security Officer on its night shift, starting December 13, 2010.  Mr. Johnson completed his probationary period with without any problems and evaluated his performance as "consistent" and "satisfactory."   In 2011 and 2012, Methodist conducted annual performance reviews of Mr. Johnson's work performance.   His performance was again judged as consistent and no negative marks were noted.

10.      In May 2013, Methodist awarded Mr. Johnson a raise in his hourly rate. Methodist awarded him a second hourly rate increase in September 2013.

11.      While on staff, Mr. Johnson applied for another position on Methodist's day shift during November 2013.  Mr. Johnson was told he was the only applicant for the position until Tom Pacura ("Pacura"), a Caucasian male, applied at the last minute.

12.      Methodist awarded the position to Pacura.   Methodist informed Mr. Johnson that Pakura had more seniority than Pacura.  Within two (2) months, however, Pacura moved out of the Omaha area and vacated the position on the day shift.

13.      Mr. Johnson again applied for the day shift position.  This time, Methodist awarded the position to Christine King, a Caucasian female.   When Mr. Johnson inquired, Methodist told him that Ms. King did not have more seniority than he but that she was "a better fit."

14.      On February 25, 2014, Mr. Johnson filed a grievance over Methodist's decision to transfer Pacura and King to the day shift.   Mr. Johnson alleged that Methodist transferred the other individuals because of his race and color.

15.      Not even one month later, King quit her position as a Security Officer on Methodist's day shift.  Mr. Johnson applied to transfer to the day shift for a third time.

2

Once again, Methodist failed to transfer Mr. Johnson.  Instead, Methodist hired from outside its pool of employees and hired a new day shift employee, Mr. Martinez.

16.     Approximately two months later, on May 11, 2014, Methodist's Lead Security Officer, Ron Ware, summoned Mr. Johnson to assist with a situation in Methodist's visitor parking lot.  Before Mr. Johnson arrived on the scene, Ware was talking to an individual on the stairs.  As Mr. Johnson approached, the individual took off running.  Ware ordered Mr. Johnson to chase the individual.

> a. The individual jumped over the ledge on the level of the parking garage.  Mr. Johnson did not jump off the ledge.
> b. Mr. Johnson proceeded to the parking lot's main floor and found the individual hiding under a car.
> c. The individual was placed in a wheel chair and escorted to X-Ray and to his room.
> d. Mr. Johnson emailed Farmer a description of the events.

17.     On the following day, May 12, 2014, Mr. Johnson's direct supervisor, Jeff Farmer, suspended Mr. Johnson without pay for five (5) days.  According to Farmer, Mr. Johnson refused to obey Ware's order to chase the individual and Methodist considered him "unreliable."

18.     In fact, Mr. Johnson did chase the individual as Ware ordered him to do.  Mr. Johnson viewed the security film and that film verified that Mr. Johnson chased the individual.  Methodist reportedly did not preserve the security footage, however.

19.     Only seven (7) days later, Farmer informed Mr. Johnson that Methodist was terminating him because he was unreliable.  Methodist revoked Mr. Johnson's certification by the National Research Council ("NRC").  Thus, effective on May 22, 2014, Methodist discharged Mr. Johnson.

20.     Methodist replaced Mr. Johnson with a Caucasian male, Aaron Bullock.

21.     Mr. Johnson filed a charge of discrimination against Methodist, alleging race discrimination, color discrimination, and retaliation. (NEOC NEB 1-13/14-6-44985-RS, EEOC 32E-2014-00608). The Nebraska Equal Opportunity Commission ("NEOC") entered a determination of no reasonable cause on March 3, 2015.  The Equal Employment Opportunity Commission ("EEOC") issued a right to sue letter on March 19, 2015, a copy of which is attached as Exhibit A.

## CURTIS JOHNSON'S CLAIMS OF
## RACE/COLOR DISCRIMINATION
## AGAINST METHODIST.

22.     Methodist discriminated against Mr. Johnson on the basis of race/color in violation of Title VII of the Civil Rights Act of 1964, as Amended, and Section 48-1104 of the Nebraska FEPA.

23.     According to Title VII of the Civil Rights Act of 1964,

> It shall be an unlawful employment practice for an employer –
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race;
>
> (2) to limit, seCurtisate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race.

42 U.S.C. § 2000e-2.

24.     Similarly, Nebraska's FEPA provides:

> It shall be an unlawful employment practice for an employer:
>
> (1) To fail or refuse to hire, to discharge, or to harass any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race;

Neb. Rev. Stat. § 48-1104(1).

25.     Mr. Johnson's employment, and his success as a Security Officer were met with distaste and even belligerence.  Methodist's supervisors and managers treat him and sanction harassment of Mr. Johnson in direct contravention of federal and state employment statutes.  *See, e.g.,* 42 U.S.C. §§ 2000e-2, Neb Rev. Stat. §§48-1104, 1004.

4

**FIRST CLAIM**

**RACE/COLOR DISCRIMINATION BY METHODIST –**
**VIOLATION OF TITLE VII & NEBRASKA FEPA**
**(42 U.S.C. § 2000e-2; Neb. Rev. Stat. § 48-1101 *et seq.*)**

26.     Mr. Johnson incorporates by reference paragraphs 1-25, inclusive, as if fully set forth.

27.     Methodist's treatment of Mr. Johnson directly contravenes 42 U.S.C. § 2000e-2 and §48-1104.

28.     Methodist failed and refused to transfer Mr. Johnson to the day shift despite three applications, and his seniority over other applicants.  Instead, Methodist awarded transfers to a white male, a white Caucasian and an applicant whose race/color is unknown.

29.     Methodist disciplined and terminated Mr. Johnson for reasons that were manufactured by Methodist management.

30.     There is no legitimate basis justifying Methodist's decision to deny Mr. Johnson the opportunity to transfer because he is a black, African-American.


WHEREFORE, Mr. Johnson requests judgment ordering an award of damages pursuant to 42 U.S.C. § 2000e-2 and Neb. Rev. Stat. § 48-1119(4) based on Methodist's discriminatory failure to transfer him to the day shift for which he repeatedly applied.


**SECOND CLAIM**

**RETALIATION BY METHODIST –**
**VIOLATION OF TITLE VII & NEBRASKA  FEPA**
**(42 U.S.C. § 2000E-2; Neb. Rev. Stat. § 48-1101 *et seq.*)**

31.     Mr. Johnson incorporates by reference paragraphs 1-30, inclusive, as if fully set forth.

32.     After he repeatedly was denied a transfer to days, Mr. Johnson filed a grievance with Methodist.  *See, e.g.,* ¶14, *supra*.  Methodist failed to address and resolve the issues.  Methodist took no affirmative action to rectify the incidents.  Instead, Methodist disciplined Mr. Johnson and terminated him.

33.     There is no legitimate business reason justifying Methodist's discipline and termination of Mr. Johnson.  He responded to a call for assistance, he followed his

supervisor's directions to chase a suspect and he accosted the suspect and escorted him from the parking lot where he was captured.

WHEREFORE, Mr. Johnson requests judgment ordering an award of damages pursuant to 42 U.S.C. § 623 and Neb. Rev. Stat. §§ 48-1004 and 1119(4) based on Methodist's retaliatory treatment.

### REQUEST FOR RELIEF

WHEREFORE, Mr. Johnson requests judgment in his favor and awarding:

1. Damages for Mr. Johnson's lost and future wages for failure to train;

2. Damages for Mr. Johnson's emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life;

3. Damages for Mr. Johnson's out-of-pocket expenses for mental health treatment;

4. Punitive damages for Methodist's knowing violation of federal discrimination laws;

5. Costs and attorney fees, as allowed by law, and

6. Other and further relief as the Court deems appropriate.

**PLAINTIFF MAKES DEMAND FOR TRIAL BY JURY.**

CURTIS JOHNSON, Plaintiff,

By: /s/ Terry A. White
Terry A. White #18282
**CARLSON BURNETT LLP**
816 s. 169TH Street
Omaha, NE 68118
Direct: (402) 682-8006
Main: (402) 934-5500  x120
Terry@CarlsonBurnett.com

*Attorneys for Plaintiff*

6

EEOC Form 161-B (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**   **EXHIBIT A**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: Curtis Johnson<br>3109 Mirror Cir<br>Bellevue, NE 68123 | From: St. Louis District Office<br>Robert A. Young Bldg<br>1222 Spruce St, Rm 8.100<br>Saint Louis, MO 63103 |
|---|---|

☐ On behalf of person(s) aggrieved whose identity is
   *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 32E-2014-00608 | **Joseph J. Wilson,**<br>**State and Local Coordinator** | **(314) 539-7816** |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u>** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____     March 19, 2015

James R. Neely, Jr.,
**Director**                          *(Date Mailed)*

Enclosures(s)

| cc: | Paula Pittman<br>Director, Employee Relations<br>NEBRASKA METHODIST HEALTH SYSTEM<br>8601 W Dodge Rd, Ste 18<br>Omaha, NE 68114 | Terry A. White<br>CARLSON & BURNETT<br>816 S. 169th St<br>Omaha, NE 68118 |
|---|---|---|